**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JON P. JOYNER** | |
| **Plaintiff,** | |
| **v.** | **CIVIL NO. 2:19-CV-14234-ILRL-JCW** |
| **CHAD WOLF, ACTING SECRETARY, UNITED STATES DEPARTMENT OF HOMELAND SECURITY** | |
| **Defendant.** | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jon Joyner opposes the motion for summary judgment filed by defendant, Acting Secretary Chad Wolf (on behalf of the United States Border Patrol). Contrary to USBP's assertions, Mr. Joyner timely initiated the EEO counseling process in this case and, as a result, is not barred from bringing any of the claims in this lawsuit.  USBP's Motion should be denied.

**SUMMARY OF THE OPPOSITION**

The United States Border Patrol asks for summary judgment on a single of issue of law: whether plaintiff Jon Joyner timely initiated EEO contact in this case.  He did.  Consequently, Mr. Joyner has properly exhausted his administrative remedies with respect to his original claim of disparate treatment, race-based discrimination as alleged in his original EEO complaint in this matter; and, accordingly, Mr. Joyner is permitted to bring his related 26-counts of disparate-treatment retaliation predicated on filing that original charge under this court's so-called "ancillary jurisdiction."  *See e.g.*, *Gupta v. East Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981) (holding that an employee-plaintiff need not exhaust a retaliation claim arising from an already exhausted EEOC charge); *accord Eberle v. Gonzales*, 240 Fed.Appx. 622, 628 (5th Cir. 2007) (specifically

1

holding its so-called "*Gupta* exception" is equally applicable to federal-employee plaintiffs alleging subsequent retaliation arising from federal EEO complaints.).

All parties agree the single regulation that controls the outcome of the issue is 29 C.F.R. § 1614.105(a)(1), which is a Department of Labor regulation that governs whether a federal employee timely initiates EEO contact in cases of unlawful discrimination. The regulation provides in full:

> An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory *or, in the case of personnel action, within 45 days of the effective date of the action.*

*Id.* (emphasis added). There is no dispute that this case is, in the phraseology of Section 1614.105, a "personnel action" case. Mr. Joyner alleged in both his EEO complaint and this federal lawsuit that USBP discriminated against him based on his race (black) when it promoted a less qualified white candidate, Christopher Bullock, to the position of Division Chief at New Orleans Sector over Mr. Joyner. There is no dispute that the effective date of Mr. Bullock's promotion over Mr. Joyner was October 14, 2018. All parties agree that Mr. Joyner initiated EEO contact on November 28, 2018, which is 45 days from the effective date of Mr. Bullock's promotion over Mr. Joyner. Section 1604.105(a)(1) is plainly written and not ambiguous. Mr. Joyner clearly and objectively initiated EEO contact within 45 days of the effective date of Mr. Bullock's promotion over Mr. Joyner. Based solely on these undisputed facts and the plain text of Section 1604.105(a)(1), USBP's motion is without merit and should be denied.

The case law interpreting the relevant portion of the text--"*in the case of personnel action, [EEO contact must be initiated] within 45 days of the effective date of the action*"—is uniform, both in the Fifth Circuit and every other federal jurisdiction to have considered the issue. *See, e.g., Maddox v. Runyon*, 139 F.3d 1017, 1019 (5th Cir. 1998) (recognizing that where May 26, 1994

2

"letter of decision" notified plaintiff that he would be removed from his job "effective" June 3, 1994, contact with EEO office "was untimely because it was initiated more than forty-five days after the *effective date of his removal*," not date of letter) (emphasis added); *James v. England*, 332 F. Supp. 2d 239, 246 (D.D.C. 2004) (holding that "45-day window opened" for personnel action of "reassignment to a new position" on the day employees began working in new positions, despite earlier notice of reassignment).

Likewise, the Fourth Circuit Court of Appeals and the District Court for the District of Columbia have thoroughly analyzed the "personnel action" clause of Section 1604.105(a)(1) specifically in the context of a non-promotion case and have held, as a matter of law, that when a federal employee is not selected for promotion and alleges the non-selection is because of unlawful discrimination, the "effective date" of the personnel action at issue, by which the employee must first initiate EEO contact within 45 days, is the effective date when selected applicant is officially promoted. *See Jakubiak v. Perry*, 101 F.3d 23, 26–27 (4th Cir. 1996) (so holding under Section 1604.105(a)(1)); *accord Vasser v. McDonald*, 228 F.Supp.3d 1, 13 (D.D.C. 2016) (same). To the best of plaintiff's review, there does not appear to be *any* case law anywhere in the jurisprudence contradicting the well-reasoned opinions of *Jukubiak* or *Vasser*.

Within the USBP, the "effective date" of all personnel actions, including promotions, is the date the employee "entered on duty" to the new position, colloquially known as the "EOD" date. In this case, Mr. Bullock's EOD date – the effective date of his promotion over Mr. Joyner – was October 14, 2018.

Against the plain meaning of Section 1604.105(a)(1) and the apparent entirety of the federal case law on point, USBP argues that the 45-day clock to initiate EEO contact begins to run "when the employee knew, or reasonably should have known, that the adverse employment

decision had been made." (R. No. 13-1 at 9) (quoting *Clark v. Resistoflex Co.*, 854 F.2d 762, 765 (5th Cir. 1988)).  USBP also cites *Delaware State Coll. v. Ricks*, 449 U.S. 250 (1980) for roughly the same proposition (R. No. 13-1 at 8).  However, *Clark* and *Ricks* are private employment cases from 1988 and 1980, respectively, not federal EEO cases, and in any event Section 1604.105(a)(1) was not enacted until October 1, 1992.  USBP cites *Vadie v. Mississippi State Univ.*, 218 F.3d 365 (5th Cir. 2000) for the same incorrect proposition, but *Vadie* is likewise a private employment case that does not interpret Section 1604.105(a)(1) and is not relevant to the determination of when a federal employee's clock to initiate EEO contact beings to run under Section 1604.105(a)(1).

USBP briefly cites to *Pacheco v. Rice*, 966 F.2d 904 (5th Cir. 1992), decided in July 1992, to support its proposition that a federal employee's 45-day clock to initiate EEO contact begins to run when the employee "knows or reasonably should know that the discriminatory act occurred," (R. No. 13-1 at 9), but *Pacheco* was again decided before the enactment of Section 1604.105, and instead interpreted its predecessor regulation, Section 1603.214.  *Id.* at 906.[1]  The two regulations are materially different.  The predecessor regulation does not contain the same 45-day timing provision in the instance of personnel actions.  The predecessor regulation provides:

> The complainant [must bring] to the attention of the Equal Employment Opportunity Counselor the matter causing him/her to believe he/she had been discriminated against within 30 calendar days of **the date of the alleged discriminatory event, the effective date of an alleged discriminatory personnel action, or the date that the aggrieved person knew or reasonably should have known of the discriminatory event or personnel action**[.]

---

[1]  In its decision, the *Pacheco* panel made a typo on reporter page 906, citing to the predecessor statute incorrectly as 29 C.F.R. § 161**4**.214(a)(1)(i), instead of the correct citation of 29 C.F.R. § 161**3**.214(a)(1)(i).  The mistake only appears once, and otherwise the panel decision cites to the predecessor regulation correctly.

29 C.F.R. § 1613.214(a)(1)(i) (repealed by superseding regulation October 1, 1992) (emphasis added).  Thus, the predecessor regulation provides that the clock to initiate EEO contact begins to run at the moment any of the enumerated events occur.

In contrast, Section 1604.105(a)(1) expressly provides that, in the case of personnel actions, the 45-day clock begins to run ***only*** as of the effective date of that action:

> An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory ***or, in the case of personnel action, within 45 days of the effective date of the action.***

29 C.F.R. § 1614.105(a)(1) (enacted October 1, 1992) (emphasis added).

In any event, the decision in *Pacheco* supports plaintiff's reading of Section 1604.105 more than the defendant's.  The federal employee plaintiff in *Pacheco* sued for wrongful termination.  *Pacheco*, 966 F.2d at 906.  The *Pacheco* panel held that, under the predecessor regulation, an employee's clock to initiate EEO contact began to run as of the "date when the complainant knows or reasonably should know of 'the discriminatory event or personnel action.'"  *Id.*  The *Pacheco* panel noted that, in the case at bar, the personnel action at issue was termination; and, thus, "the thirty day period for notifying an EEO counselor began at latest ***on the effective date of Pacheco's termination.***"  *Id.* (emphasis added).  Thus, even under the predecessor regulation to Section 1604.105, the Fifth Circuit has clearly held that, in cases of personnel action, the clock to initiate EEO contact begins to run on the effective date of that action.

USBP argues against this plain reading of Section 1604.105 because, about two months before USBP officially promoted Mr. Bullock over Mr. Joyner, the selecting official – the Chief Patrol Agent of New Orleans Sector at the time, Gregory Bovino – announced during a staff meeting at which Mr. Joyner was present that CPA Bovino was going to hire Mr. Bullock as one of the three Division Chiefs assigned at New Orleans Sector.  USBP argues that Mr. Joyner "should

have known" at that moment that Bovino had discriminated against him by announcing the impending hire of Bullock. But whether or not Mr. Joyner should have believed CPA Bovino had discriminated him at that moment is irrelevant. As noted in a recent federal EEO case from the Western District of Louisiana, "[t]he 45-day limitation period begins to run from the time the discriminatory event or personnel action occurs, not when the plaintiff discovers or can prove that a discriminatory intent motivated the action." *Payne v. Fanning*, 1:13-CV-02732, 2016 WL 4499025 at *6 (W.D. La. June 22, 2016), *report and recommendation adopted*, 1:13-CV-02732, 2016 WL 4499035 (W.D. La. Aug. 23, 2016).

Simply put, in this case, Mr. Joyner challenges a *personnel action*: the promotion of a less qualified employee to a position that Mr. Joyner applied for. Section 1604.105(a)(1) expressly provides that Mr. Joyner must initiate EEO contact within 45 days of the personnel action in question. Mr. Joyner objectively did so. Thus, his action was timely.

Likewise, in the Fifth Circuit under the so-called "*Gupta* exception," because Mr. Joyner properly exhausted his original EEO complaint in this matter, he is not required to file new EEO complaints alleging he was retaliated against and passed over for other promotions specifically because he filed that original complaint. *Eberle v. Gonzales*, 240 Fed.Appx. 622, 628 (5th Cir. 2007) (so holding). Instead, Mr. Joyner properly included those claims for retaliation in this lawsuit and is permitted to prosecute them in this case.

Ultimately, USBP asks the Court to disregard the plain meaning of Section 1604.105(a)(1), all relevant case law interpreting that regulation, and the Fifth Circuit's analytical framework in *Pacheco* interpreting the predecessor regulation to Section 1604.105, and instead asks the Court to engage in a fact-based inquiry about when Mr. Joyner "knew or should have known" that CPA Bovino had discriminated against him. When, exactly, CPA Bovino actually determined to

discriminate against Mr. Joyner is relevant to many aspects of this case, but not to whether Mr. Joyner timely initiated EEO contact.  For that question, the only date that matters is the effective date of Mr. Bullock's promotion over Mr. Joyner.  Based on that date – October 14, 2018 – Mr. Joyner timely initiated EEO contact in this case.

**STATEMENT OF DISPUTED AND UNDISPUTED MATERIAL FACTS**

Defendant's Motion for Summary Judgment does not reach the merits of Plaintiff's claim. Rather, Defendant alleges that Mr. Joyner "failed to timely contact an EEO counselor about his discrimination claim and, therefore has failed to timely exhaust his administrative remedies…"[2] Thus, plaintiff's discussion of the facts here is limited in scope to those that establish his contact was timely.

The basic timeline of events in this case is not disputed. Mr. Joyner was hired as a border patrol agent by United States Customs and Border Protection (CBP) in 1996.[3] He applied for a promotion to the position of Supervisory Border Patrol Agent (Division Chief) of New Orleans Sector in April 2018.[4] He was initially selected for an interview.[5] Before the scheduled interview, however, Gregory Bovino became the new Chief Patrol Agent of the New Orleans Sector.[6] CPA Bovino canceled the job posting for the position that Mr. Joyner had applied for and never interviewed Mr. Joyner.[7] On August 6, 2018, CPA Bovino stated at a staff meeting that he had selected Christopher Bullock for the position.[8] Mr. Bullock had not applied for the promotion

---

[2]    R. No. 13 at 1 (Defendant's Motion for Summary Judgment).
[3]    R. No. 1 at ¶ 7 (Complaint); R. No. 12 at ¶ 7 (Defendant's Answer).
[4]    R. No. 1 at ¶ 10 (Complaint); R. No. 13-4 at ¶ 1 (Defendant's Statement of Undisputed Facts).
[5]    R. No. 1 at ¶ 69 (Complaint); R. No. 13-4 at ¶ 2 (Defendant's Statement of Undisputed Facts).
[6]    R. No. 1 at ¶ 70 (Complaint); R. No. 13-4 at ¶ 3 (Defendant's Statement of Undisputed Facts).
[7]    R. No. 1 at ¶ 72 (Complaint); R. No. 13-4 at ¶ 4 (Defendant's Statement of Undisputed Facts).
[8]    R. No. 13-4 at ¶ 6 (Defendant's Statement of Undisputed Facts).

through a competitive posting as Mr. Joyner had; rather, Bovino simply promoted Bullock over Joyner non-competitively.[9]

Mr. Joyner was present for the staff meeting but did not consider CPA Bovino's comments to be "an official notification."[10] As he explained to the EEO, "[H]aving seen numerous unofficial selections fail to either clear the vetting process or decline acceptance of the position, I knew that mentioning it during a meeting was not an official notification."[11] He noted that CPA Bovino did not announce whether Mr. Bullock had accepted the position, and further explained, "In my career as a Border Patrol Agent (nearly 23 years), I have become acutely aware that a selection is not official until the selectee actually assumes the position. On two separate occasions during my career, I have been 'unofficially' selected for positions and have accepted; only to be informed later that another candidate had been selected 'officially.'"[12]

Mr. Joyner, who is Black, suspected that he was not being fairly considered for the promotion because of his race.[13] Mr. Joyner was aware that there was a 45-day time limit to contact the EEO regarding a complaint of racial discrimination because of workplace training and posters.[14] None of the information and training he received explained how to calculate the deadline where the alleged discrimination was a personnel action.[15]

Mr. Joyner knew from his personal experience of the selection process, however, that within the USB, the actual "effective date" of an employee's lateral transition or promotion to a

---

[9] R. No. 1 at ¶ 74 (Complaint).
[10] R. No. 13-2 at 14 (Plaintiff's Clarification Letter).
[11] R. No. 13-2 at 14 (Plaintiff's Clarification Letter).
[12] R. No. 13-2 at 15 (Plaintiff's Clarification Letter).
[13] R. No. 1 at 9-10  (Complaint).
[14] R. No. 13-2 at 15-16 (Plaintiff's Clarification Letter).
[15] Declaration of Jon Joyner at 3 ¶ 12 (a copy of which is attached here as **Exhibit A**).

new position is the date that employee "entered on duty" for the position.[16] Thus, he used the effective date of Mr. Bullock's promotion—the day he "entered on duty"—to calculate the 45-day deadline, and made sure to contact the EEO counselor within 45 days of that date.[17]

## ARGUMENT

The plain language of 29 C.F.R. § 1614.105(a)(1) provides that an "aggrieved" employee must contact an EEO counselor "in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). Because Mr. Joyner initiated contact within 45 days of the effective date of Christopher Bullock's promotion, his contact was timely. USBP's argument that the date when Mr. Joyner "knew or should have known" that CPA Bovino decided to promote Mr. Bullock should instead be used to calculate the 45-day timeline is contrary to the plain language of the regulation and all of the apparent case law that interprets it.

Even if Mr. Joyner did miss the deadline—which he did not—he would be entitled to equitable tolling on the basis that the notice he was provided regarding the 45-day requirement was not sufficient to inform him of when the clock to initiate EEO contact would begin to run.

## 1.     The summary judgment standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(a)); *see also Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015). The Court "must not resolve factual disputes by weighing conflicting evidence"

---

[16] Exhibit A at ¶ 8 (Declaration of Jon Joyner).
[17] Exhibit A at ¶ 12 (Declaration of Jon Joyner).

because "it is the province of the jury to assess the probative value of the evidence." *Kennett-Murray Corp. v. Bone*, 622 F.2d 887 (5th Cir. 1980).

## 2.    In the case of a personnel action, the 45-day clock to initiate EEO counseling begins to run on the effective date of action

There is a 45-day time limit for an "aggrieved" federal employee to initiate the informal counseling process with the EEO.  29 C.F.R. § 1614.105(a).  In determining when this 45-day clock begins to run, the regulation "expressly distinguishes cases involving personnel actions from other cases involving allegations of discrimination." *Jakubiak v. Perry*, 101 F.3d 23, 26 (4th Cir. 1996).  "An aggrieved person must initiate contact with a Counselor within 45 days of the matter alleged to be discriminatory *or, in the case of personnel action, within 45 days of the effective date of the action*." 29 C.F.R. § 1614.105(a)(1) (emphasis added).  This time limit "shall" be extended in certain circumstances, including where the person "was not notified of the time limits and was not otherwise aware of them," "did not know and reasonably should not have known that the…personnel action occurred," and "for other reasons considered sufficient by the agency or the Commission."  29 C.F.R. § 1614.105(a)(2).

## 3.    USBP's argument that Mr. Joyner did not timely initiate EEO contact is without merit because it flatly contradicts the plain language of 29 C.F.R. § 1614.105(a)(1)

USBP argues that Mr. Joyner's 45-day clock to initiate EEO contact in this case began to run on the day Mr. Joyner "learned that Christopher Bullock was laterally transferred to the Division Chief position" on August 6, 2018 (or, in an alternatively argument, "when Plaintiff learned on May 11, 2018 that the job opportunity announcement was canceled and would be re-announced").[18]  Defendant's analysis suffers from two fundamental errors: (1) defendant's omission of the entire relevant half of the regulation at issue, Section 1604.105(a)(1), which

---

[18]  R. No. 13-1 at 8 (Defendant's Memorandum in Support of Motion for Summary Judgment).

expressly relates to personnel decisions, and (2) defendant's incorrect assumption that the date of an employee's "knowledge" is at all relevant in determining the effective date of a personnel action.

        **a.**      **Defendant ignores the relevant portion of the regulation applying to personnel actions**

USBP's recitation of the Section 1604.105(a)(1) conspicuously leaves out the only relevant part of the regulation. USBP states only that "an 'aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory.'"[19] Defendant fails to mention the second half of the sentence: "...*or, in the case of personnel action, within 45 days of the effective date of the action*." 29 C.F.R. § 1614.105(a)(1) (emphasis added). These two clauses are separate and warrant a separate analysis. *See Green v. Brennan*, 136 S. Ct. 1769, 1776 n. 5 (2016) (explaining that because plaintiff did not contend constructive discharge was "personnel action," the court "therefore address[ed] the 'matter alleged to be discriminatory' clause only"). In this case, Mr. Joyner challenges a ***personnel action***—the promotion of another candidate, Mr. Bullock, to the Division Chief position—not some other type of discriminatory treatment such as race-based harassment. Thus, he is not required to identify "the date of the matter alleged to be discriminatory," and using any such date to calculate the 45-day timeline would be contrary to the plain language of the regulation.

This distinction serves an important purpose: clarity. Identifying the "date of the matter alleged to be discriminatory" here is open to a wide variety of interpretations. Perhaps it was when CPA Bovino decided to cancel Mr. Joyner's scheduled interview. Perhaps it was when Mr. Bullock was offered the position instead of Mr. Joyner. Perhaps it was when Mr. Bullock accepted the job,

---

[19] R. No. 13-1 at 7 (Defendant's Memorandum in Support of Motion for Summary Judgment).

or when his promotion was approved by USBP headquarters, or on the effective date of Mr. Bullock's actual promotion over Mr. Joyner. Indeed, defendant's brief highlights this very issue; rather than choose a single date, USBP argues, "The alleged discriminatory act was the lateral transfer of Christopher Bullock which denied Plaintiff an opportunity to compete for the Division Chief position. And/or, as the CRCL interpreted Plaintiff's claims, the alleged discriminatory act was when Plaintiff learned on May 11, 2018 that the job opportunity was canceled and would be re-announced."[20]

But identifying "the effective date of the personnel action" under Section 1604.105(a)(1) is not ambiguous. CBP has a policy of announcing its personnel decisions in writing with clearly designated "effective dates."  Within USBP, an employee's "effective date" in a new position is the same as the date the employee "entered on duty" for the new position.[21]  USBP admits that Mr. Bullock's "entered on duty" date was October 14, 2018.[22]  Mr. Joyner alleged in his lawsuit and expressly testifies via declaration in support of this opposition that the effective date and EOD date of Bullock's promotion was October 14, 2018.[23]  USBP does not allege that any other date was the effective date or EOD date of Bullock's promotion.

> **b.**     ***Only*** **the effective date of the personnel action in question—not the date the employee knew of the underlying decision—is considered in calculating the 45-day clock to initiate EEO contact**

Case law analyzing 29 C.F.R. § 1614.105(a)(1) (or its predecessor regulation) uniformly provides that the 45-day time to initiate EEO contact begins on the effective date of the personnel action, regardless of when the employee learned about the decision.  *See, e.g.*, *Maddox v. Runyon*,

---

[20]  R. No. 13-1 at 8 (Defendant's Memorandum in Support of Motion for Summary Judgment).
[21]  Plaintiff's Counter-Statement of Disputed Material Facts at 1 ¶¶ 2-4; Declaration of Jon Joyner at 2 ¶ 10 (a copy of which is attached here as **Exhibit A**).
[22]  R. No. 12 at 8 ¶ 76 (Defendant's Answer).
[23]  Declaration of Jon Joyner at 2 ¶ 10.

139 F.3d 1017, 1019 (5th Cir. 1998) (noting that where May 26, 1994 "letter of decision" notified plaintiff that he would be removed from his job "effective" June 3, 1994, contact with EEO office "was untimely because it was initiated more than forty-five days after the *effective date of his removal*," not date of letter) (emphasis added); *Smith v. Potter*, 445 F.3d 1000, 1007 (7th Cir. 2006) (holding that, where October 22, 1998 letter notified plaintiff that she would be "removed from the Postal Service on November 27, 1998," her "cause of action accrued on November 27, 1998"); *Molina v. Vilsack*, 748 F. Supp. 2d 702, 709 (S.D. Tex. 2010) (explaining that "[t]he relevant personnel action in this case" took place on the actual date of plaintiff's transfer, not earlier date on which he was emailed notice of reassignment); *James v. England*, 332 F. Supp. 2d 239, 246 (D.D.C. 2004) (holding that "45-day window opened" for personnel action of "reassignment to a new position" on the day employees began working in new positions, despite earlier notice of reassignment).

Here, the effective date of the personnel action at issue – Mr. Bullock's promotion over Mr. Joyner for Division Chief of New Orleans Sector – was the day Mr. Bullock officially started in the promoted position. Thus, the 45-day clock to initiate EEO contact began to run on that date. Because Mr. Joyner initiated counseling within 45 days of Mr. Bullock's start date, his action was timely and he properly exhausted his remedies with the EEO. The question of when Mr. Joyner "knew" Mr. Bullock was promoted is irrelevant.

USBP cites to *Pachecho v. Rice* for the proposition that "[t]he limitations period begins to run when a plaintiff knows or reasonably should know that the discriminatory act has occurred, not when he first perceives that a discriminatory motive caused the act."[24] But the *Pacheco* panel

---

[24] R. No. 13-1 at 9 (Defendant's Memorandum in Support of Motion for Summary Judgment) (citing *Pacheco v. Rice* 966 F.2d 904, 906 (5th Cir. 1992)).

did not analyze Section 1604.105 because it was not enacted yet.  Even so, *Pacheco*'s analysis of the predecessor regulation accords with plaintiff's argument here regarding the time to initiate EEO contact in cases involving personnel actions, not defendant's.  The federal employee plaintiff in *Pacheco* sued for wrongful termination.  *Pacheco*, 966 F.2d at 906.  The *Pacheco* panel held that, under the predecessor regulation, an employee's clock to initiate EEO contact begins to run as of the "date when the complainant knows or reasonably should know of 'the discriminatory event *or personnel action.*'"  *Id.* (emphasis added).  The *Pacheco* panel noted that, in that case, the personnel action at issue was termination; and, thus, "the thirty day period for notifying an EEO counselor began at latest *on the effective date of Pacheco's termination.*"  *Id.* (emphasis added).  Thus, even under the predecessor regulation to Section 1604.105, the Fifth Circuit has clearly held that, in cases of personnel action, the clock to initiate EEO contact begins to run as of the effective date of that action.

In any event, under the current, post-1992 regulation, knowledge is not considered in determining the 45-day timeline to initiate EEO contact in the case of a personnel action.  Instead, *lack* of knowledge can be a basis for an extension if the employee misses the deadline.  29 C.F.R. § 1614.105(a)(2) (so providing).

Accordingly, more recent cases, including those citing to *Pacheco*, do not include the "knew or should have known" language.  *See, e.g.*, *Molina*, 748 F.Supp. 2d at 706 (citing *Pacheco* for the rule that "the 45-day limitation period begins from the time the discriminatory event or personnel action occurs" without any reference to the date the employee "knows or should have known" of the event or personnel action); *Payne v. Fanning*, 1:13-CV-02732, 2016 WL 4499025, at *6 (W.D. La. June 22, 2016), *report and recommendation adopted*, 1:13-CV-02732, 2016 WL 4499035 (W.D. La. Aug. 23, 2016) (same).

Finally, in its supporting memorandum, USBP relies on *Clark v. Resistoflex Co., Div. of Unidynamics*, 854 F.2d 762 (5th Cir. 1988), *Delaware State Coll. v. Ricks*, 449 U.S. 250 (1980), *Vadie v. Mississippi State Univ.*, 218 F.3d 365 (5th Cir. 2000), and *Smith v. Johnson*, 647 F. App'x 377, 378 (5th Cir. 2016) in its discussion of notice requirements.[25] *Clark*, *Ricks*, and *Vadie* deal with the procedural requirements for employees in the private sector, not federal employees in EEO cases.  Title VII requires private-employer plaintiffs to file a charge with the EEOC "within 180 days after the alleged unlawful practice occurred." 29 U.S.C. § 626(d)(1)(A). This statute, unlike 29 C.F.R. § 1614.105(a)(1), has no specific guidance for how the timeline should be calculated when a ***personnel action*** is challenged.  Indeed, the Department of Labor superseded the predecessor regulation to Section 1604.105 on October 1, 1992 to specifically include the "personnel action" clause under analysis in this case.  Thus, *Clark*, *Ricks*, and *Vadie* provide no support for USBP's position.

Finally, *Smith* supports plaintiff's reasoning on these issues, not defendant's. The federal employee plaintiff in *Smith* complained that he was denied a new position within FEMA and, later, a merit promotion in the employee's current FEMA position.  *Id.* at 378.  But in both instances the *Smith* panel noted that the employee failed to initiate EEO contact within 45-days of either the known or latest possible effective date of the action at issue.  *Id.*  The employee was not selected for the new position he wanted but was instead placed into a different job.  The *Smith* panel noted the employee had not initiated EEO contact even within 45-days from the date the employee began working in the job he did not want.  *Id.*  The employee was later denied a merit promotion, and the *Smith* panel noted the employee did not initiate EEO contact within 45 days from the date of the denial.  *Id.*  The employee argued he had no reason to suspect discrimination until later, but the

---

[25] R. No. 13-1 at 9 (Defendant's Memorandum in Support of Motion for Summary Judgment).

*Smith* panel, citing to *Pacheco*, rejected that argument: "The 45 days run from the date [the employee] knows that an adverse employment action occurred, not from when he first perceives discriminatory animus." *Id.* at 378. *Pacheco* and *Smith* thus support plaintiff's interpretation of Section 1604.105(a)(1) in that, in the case of a personnel action, EEO contact must be initiated within 45-days of the effective date of that action. USBP's argument – that Mr. Joyner should have initiated contact within 45 days of when he suspected CPA Bovino had discriminated against him by announcing his intent to hire Christopher Bullock – is foreclosed by the reasoning in *Pacheco*, *Smith*, and every other apparent federal case that has interpreted Section 1604.105(a)(1) in the context of adverse personnel actions. What Mr. Joyner knew, or when, is simply not relevant under Section 1604.105(a)(1) regarding personnel actions.

### 4.    The "effective date" of the personnel action in a non-selection case is the winning applicant's start date in the position

The Fifth Circuit has not been presented with the exact factual issue here—when the 45-day clock starts to run when the specific challenged personnel action is the employee's non-selection for a promotion in favor of a competing candidate. However, the courts that have considered this scenario have held the plain language of 29 C.F.R. § 1614.105(a)(1) controls, and that the clock starts to run on the effective date of the winning applicant's promotion—that is, the day he or she officially starts the job. Within USBP, this date is known as an employee's "entered on duty" date.

In *Jakubiak v. Perry*, 101 F.3d 23 (4th Cir. 1996), the winning applicant was "officially installed" in the position on May 29, 1994, as noted in her SF-50 Notification of Personnel Action. *Id.* at 26. Though the plaintiff had "heard several rumors" in April that the winning applicant would be appointed, the plaintiff did not receive official, written notice that another candidate was selected until July 25, 1994. *Id.* at 25-6. The court held that the 45-day time period began on May

29, 1994—the date the winning applicant was "officially installed" in the position. *Id.* at 26. Relying on the "explicit" language of the regulation, the court reasoned that "the personnel action of which [the plaintiff] complains is [the winning applicant]'s appointment to the position of Deputy Director" on May 29. *Id.*[26]  Neither the "rumors" in April nor the official notification in July were relevant to the 45-day time limit.  *See also Vasser v. McDonald*, 228 F. Supp. 3d 1, 13 (D.D.C. 2016)  (explaining, "Here, the dates of the 'personnel actions'—within 45 days of which the plaintiff must notify an EEO counselor—are the dates when other candidates are officially promoted" and stating that ***"[u]nder the test of the regulation, it does not matter whether the employee received notice of the non-selection, or knew that another person was selected"***) (emphasis added); *Medlock v. Rumsfeld*, 336 F. Supp. 2d 452 (D. Md. 2003) (explaining that effective date of plaintiff's non-selection starting the 45-day time period was "the effective date on the SF-50 of the person selected for the position").

Here, as in *Jakubiak*, *Vasser*, and *Medlock*, the effective date of Mr. Joyner's non-selection was the same day Mr. Bullock started in his newly promoted position over Mr. Joyner. It is uncontested that Mr. Joyner initiated the EEO counseling process within 45 days of that date. Thus, his actions were timely.  USBP's arguments to the contrary have no merit.

**5.    Even if USBP's proposed standard is applied, summary judgment is inappropriate**

USBP argues that the limitations period began to run when Mr. Joyner "knew or reasonably should have known" that the discriminatory act has occurred. For the reasons described at length above, this argument is without merit, and Mr. Joyner's knowledge is not material to determining the timeline. However, even if this standard were applied—thus making his knowledge a "material

---

[26]  The court also held that the plaintiff was entitled to a waiver of the 45-day time limit because he had not been provided sufficient notice of the time limit.  *Id.* at 28.

fact"—summary judgment would be inappropriate because there is a genuine issue of fact on this issue. *See* Fed. R. Civ. P. 56(a).

In the light most favorable to the non-moving party (plaintiff), Mr. Joyner very reasonably did not believe that Mr. Bullock had been promoted over him until Mr. Bullock was, in fact, promoted on October 14, 2018. He was aware from his decades of experience at USPB that Chief Bovino having "mentioned that he had selected Agent Bullock" did not make it official.[27] Over the years, Mr. Joyner saw "numerous unofficial selections fail to either clear the vetting process or decline acceptance of the position" and twice had been "unofficially" selected for positions himself, only to learn later that the jobs went to another candidate.[28] Moreover, he never received a non-selection notification from USA Jobs.[29]

In contrast, the reading of the facts that defendant asks the court to adopt is unclear and unreasonable. In one of its theories, defendant asserts (without explanation) that Mr. Joyner should have known he had been discriminated against when the job posting was cancelled—even though he could not possibly have known why it was cancelled, and the cancellation indicated he would have the opportunity to be considered when the posting was re-announced.[30] On another theory, defendant argues that "Plaintiff learned that Christopher Bullock was laterally transferred to the Division Chief position" on the date of the staff meeting, August 6, 2018.[31] How Mr. Joyner was supposed to have "learned" that Mr. Bullock "*was* laterally transferred" months before this personnel action even took place is never explained.

---

[27]  R. No. 13-2 at 14-15 (Plaintiff's Clarification Letter).
[28]  R. No. 13-2 at 14-15 (Plaintiff's Clarification Letter).
[29]  R. No. 13-2 at 14 (Plaintiff's Clarification Letter).
[30]  R. No. 13-1 at 8 (Defendant's Memorandum in Support of Motion for Summary Judgment).
[31]  R. No. 13-1 at 7 (Defendant's Memorandum in Support of Motion for Summary Judgment).

**6.      Even if Mr. Joyner's contact with the EEO counselor was untimely, he is entitled to an extension of the 45-day deadline**

Finally, should the Court formulate a different interpretation of 29 C.F.R. § 1614.105(a)(1) and find that Mr. Joyner's contact with the EEO counselor was untimely, Mr. Joyner should nevertheless be entitled to an extension on the basis that he was not properly notified of the applicable time limits.  *See* 29 C.F.R. § 1614.105(a)(2).  Section 1604.105(a)(2) contains a regulatory tolling provision, and waiver of the 45-day timeline is mandatory under these circumstances. *Jakubiak* 101 F.3d at 24, 27 (4th Cir. 1996) (holding that plaintiff was entitled to a waiver of the 45-day time limit where notice was not "reasonably geared to inform [him] of the time limits."). Here, Mr. Joyner was provided with training that did not explain how this deadline was to be calculated when the alleged discrimination was a personnel action – in this case the promotion of a less qualified candidate because of racial animus.[32]

Instead, Mr. Joyner reasonably and in good faith used the effective date of Mr. Bullock's promotion to calculate the 45-day timeline.[33] In doing so, he reached the conclusion that is shared with every federal court that has apparently considered the same issue. If Mr. Joyner was, nonetheless, incorrect, it is because he was not informed of the relevant requirements.  The purpose of the 45-day time limit is to ensure that employees diligently pursue their rights under Title VII, not to punish an employee who makes a good faith mistake despite his best efforts to comply with the applicable regulations. *See Holland v. Florida*, 560 U.S. 631, 649 (2010) (explaining that litigant may seek equitable tolling on the basis that he has been pursuing his rights diligently); *Teemac v. Henderson*, 298 F.3d 452 (5th Cir. 2002) (explaining that "employee's diligent pursuit is relevant" for equitable tolling pursuant to 29 C.F.R. § 1614.105(a)(2)).

---

[32] Exhibit A at ¶ 11 (Declaration of Jon Joyner).
[33] Exhibit A at ¶ 12 (Declaration of Jon Joyner).

Absent any contrary pronouncement from the Fifth Circuit, Mr. Joyner should not have been required to know more than the judges on the Fourth Circuit Court of Appeals or the District Court for District of Columbia to initiate the "informal" process outlined in the regulation. *See* 29 C.F.R. § 1614.105(a). Thus, even if Mr. Joyner was incorrect about when the 45-day timeline began, he is entitled to equitable tolling, and USBP's motion should be denied.

**7.    Mr. Joyner's retaliation claims are properly before the court**

Finally, defendant seeks to dismiss Mr. Joyner's 26 other discreet allegations of non-promotion taken against in him in retaliation for filing his original EEO complaint in this matter for allegedly failing to "exhaust" those claims administratively. This argument has no merit.

USBP admits that Mr. Joyner's retaliation claims in this case grow out of his original EEO complaint of discrimination in this matter. USBP further admits that "[t]he Fifth Circuit has carved out an exception to [the exhaustion] rule and held that a federal court has 'ancillary jurisdiction' to hear a retaliation claim that has not been filed with the EEOC when the retaliation claim 'grows out of an administrative charge that is properly before the court.'" (R. No. 13-1 at 10-11 (internal citations omitted)). This is a correct statement of law in the Fifth Circuit. In the Fifth Circuit, an employee-plaintiff need not administratively exhaust a retaliation claim arising from an already exhausted EEOC complaint before filing suit on that retaliation claim in federal court. *Gupta v. East Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981) (so holding). The Fifth Circuit has held its so-called "*Gupta* exception" is equally applicable to federal-employee plaintiffs alleging subsequent retaliation arising from federal EEO complaints. *Eberle v. Gonzales*, 240 Fed.Appx. 622, 628 (5th Cir. 2007) (so holding).

USBP's only argument here is that Mr. Joyner did not timely initiate EEO contact regarding Mr. Bullock's promotion over Mr. Joyner for the Division Chief position. For all the reasons

argued above, Mr. Joyner did timely initiate contact. Accordingly, the Fifth Circuit's *Gupta* exception applies, and Mr. Joyner was not required to first file separate EEO complaints for the 26 discrete acts of retaliation asserted in this lawsuit.

## CONCLUSION

For the reasons explained above, Mr. Joyner respectfully requests the Court to deny Defendant's Motion for Summary Judgment.

Respectfully submitted,

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz, TA (Bar #32746)
The Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A
Mandeville LA 70448
Telephone: (504) 275-5149
Facsimile: (540) 910-1704
Email: vogeltanz@gmail.com

*Attorney for plaintiff Jon Joyner*

## LOCAL RULE 5.4 CERTIFICATION

Pursuant to Local Rule 5.4, no certificate of service is required for this document because all parties are electronic filers and will receive notice through the court's electronic filing system.

/s/ Kevin S. Vogeltanz