IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JON P. JOYNER<br><br>**Plaintiff,**<br><br>v.<br><br>CHAD WOLF, ACTING SECRETARY, UNITED STATES DEPARTMENT OF HOMELAND SECURITY<br><br>**Defendant.** | CIVIL NO. 2:19-CV-14234-ILRL-JCW |

**PLAINTIFF'S SUR-REPLY MEMORANDUM
IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

Plaintiff Jon Joyner is a career Agent with the United States Border Patrol (USBP). He originally filed an EEO complaint and, later, this lawsuit, alleging that his newly appointed Chief Patrol Agent, Gregory Bovino, discriminated against Mr. Joyner because of his race when Bovino selected a less qualified, white man over Mr. Joyner for a prestigious promotion to the Division Chief position within New Orleans Sector. Mr. Joyner testified for purposes of this summary judgment motion via his verified complaint that Bovino pretextually cancelled the competitive posting for the Division Chief position for which Mr. Joyner had originally applied so that Bovino could then select and laterally promote the less qualified, white comparator, a man named Christopher Bullock, who had not even applied for the position.

USBP filed a motion for summary judgment arguing a single issue of law: that Mr. Joyner did not exhaust his administrative remedies before filing this lawsuit because Mr. Joyner did not timely initiate EEO contact at the administrative level. USBP further argued that, as a consequence, Mr. Joyner's claims of retaliation which grew out of his initial claim were not properly before the Court.

1

Mr. Joyner timely opposed the motion, arguing that the clear text of the regulation at issue, 29 C.F.R. § 1614.105(a)(1), required Mr. Joyner to initiate EEO contact "in the case of personnel action, within 45 days of the effective date of the action," and that Mr. Joyner did so because the "effective date" of Mr. Bullock's promotion was October 14, 2018, and Mr. Joyner contacted EEO within 45 days later on November 28, 2019.

In its motion for summary judgment, USBP did not address the "personnel action" clause of Section 1614.105(a)(1) and did not appear to cite to any federal case that directly interpreted or applied the "personnel action" clause in a non-selection-for-promotion case. In reality, the only three courts plaintiff could find that have apparently addressed this specific issue have held that Mr. Joyner's interpretation is correct – the "effective date" of the personnel action at issue in a non-selection-for-promotion case is the official start date of the winning applicant in his or her newly promoted position. *See Jakubiak v. Perry*, 101 F.3d 23, 26–27 (4th Cir. 1996) (so holding under Section 1604.105(a)(1)); *accord Vasser v. McDonald*, 228 F.Supp.3d 1, 13 (D.D.C. 2016) (same); *Medlock v. Rumsfeld*, 336 F. Supp. 2d 452, 462 (D. Md. 2003) (same).

In its Reply brief, USBP makes two points—only one of which bears any relationship to the prior summary judgment briefing in this case. First, USBP argues that the Supreme Court's recent decision in *Green v. Brennan* is relevant to the determination of this issue. That is incorrect because the Supreme Court in *Brennan* expressly notes that its decision is inapplicable in "personnel action" cases under Section 1614.105(a)(1). But even if argued by analogy, the decision in *Brennan* supports plaintiff's argument in this case, not defendant's.

Second, USBP now argues—for the first time—that Mr. Joyner has "offer[ed] no evidence" he was "qualified" for the position he sought, nor any evidence "that he applied . . . the non-competitive lateral transfer to the Division Chief position." (R. No. 19 at 1, 5.) USBP

also attempts to go well beyond the borders of its initial motion to reach the merits of the case, despite the fact discovery has not yet begun and this Court has not yet entered a Scheduling Order in the case. USBP has thus waived its new argument by failing to raise it in its initial brief. Even if it had not been waived, this argument is without merit.

Here, USBP requested summary judgment on a single issue, unrelated to the merits of Mr. Joyner's discrimination claim: Whether Mr. Joyner timely initiated EEO contact. The facts and law of this case are that he did so. Therefore, USBP's motion for summary judgment should be denied.

A. *Green v. Brennan* **Is Expressly Inapplicable to This Case; and, in any Event, Generally Supports Plaintiff's Argument by Analogy**

USBP first argues that the Supreme Court's recent decision in *Green v. Brennan* supports its argument that the 45-day clock to initiate EEO contact began to run when Mr. Joyner knew or should have known that Bovino had selected Bullock over Mr. Joyner for promotion in August 2019, not the effective date of Bullock's promotion on October 14, 2018. This is a misstatement of *Green*. Most importantly, **the Supreme Court in *Green* specifically noted its holding was inapplicable in "personnel action" cases under Section 1604.105(a)(1) because plaintiff Green did not assert his constructive discharge (i.e., his voluntary resignation) was a "personnel action" under the regulation:**

> [Plaintiff] Green does not contend that his alleged constructive discharge is a "personnel action." *See* Brief for Petitioner 17–18; *Green v. Donahoe*, 760 F.3d 1135, 1144, n. 3 (C.A. 10 2014). ***We therefore address the "matter alleged to be discriminatory" clause only.***

*Green v. Brennan*, __ U.S.__; 136 S.Ct. 1769, 1776 n.5 (2016) (emphasis added). To the extent USBP offers *Green* as controlling precedent in this case, that assertion is expressly foreclosed by

3

the text of *Green* itself, and it was error for USBP to not alert this Court that *Green* was expressly inapplicable as precedent in this case.

Regardless, the holding in *Green* generally favors Mr. Joyner's interpretation of timeliness issue because the Supreme Court held that, in the case of a constructive-discharge, a plaintiff's 45-day clock to initiate EEO contact begins to run as of the date of the plaintiff's resignation, not some earlier date. By analogy here, Mr. Joyner's 45-day clock to initiate EEO contact began to run on the effective date of Bullock's promotion – October 14, 2018 – not some earlier date.

In *Green*, the plaintiff voluntarily resigned but claimed he was constructively discharged because of a hostile work environment. The District Court granted summary judgment in favor of defendant United States Postal Service on the issue of whether plaintiff timely initiated EEO contact, and the Tenth Circuit affirmed. The Supreme Court reversed, holding that in a federal-employment, constructive-discharge case, a plaintiff's 45-day clock to initiate EEO contact begins to run "only after an employee resigns." *Id.* at 1776. Ultimately, the Supreme Court remanded *Green* back to the Tenth Circuit to determine on what date plaintiff actually resigned. *Id.* at 1782. In this case, however, there is no question regarding the effective date of the discriminatory personnel action at issue – that date is the effective start date of Christopher Bullock in his promoted position of Division Chief on October 14, 2018.

Analogies to this case aside, however, once again the Supreme Court specifically noted its ruling in *Green* **did not** consider the "personnel action" clause of Section 1604.105(a)(1) because plaintiff Green did not allege his resignation was a personnel action. *Id.* at 1776 n. 5.

In contrast, every federal court plaintiff has identified that has apparently considered the specific case of a non-selection-for-promotion, "personnel action" holds the "effective date" by

4

which a plaintiff must initiate EEO contact is the date on which the winning applicant officially begins work in his new position. Indeed, the *Vasser* case, *supra*, was decided by the District Court for the District of Columbia just six months after *Brennan* was decided; the *Vasser* court cited (without commentary) to the Supreme Court's decision in *Green*; and the *Vasser* court still held that under Section 1614.105(a)(1) a plaintiff must initiate EEO contact in a non-selection-for-promotion case within 45-days of the "effective date" when the winning applicant officially started in his promoted position. *Vasser*, 228 F.Supp.3d at 13.

In this case, there is no dispute that the effective date of Mr. Bullock's promotion was October 14, 2018, and therefore Mr. Joyner's EEO contact on November 28, 2018 was timely.

**B.     USBP Cannot Raise New, Fact-Based Arguments in Its Reply Brief**

For the first time ever, USBP raises the notion that Mr. Joyner's 45-day clock could not have begun to run on the effective start date of Mr. Bullock's promotion in October because Chief Patrol Agent Bovino cancelled the original Division Chief job posting Mr. Joyner had applied for in May 2018 and laterally promoted Bullock. USBP argues that this means Mr. Joyner had never "competed" against Bullock for the Division Chief promotion, and so the effective date of the personnel action in question cannot be Bullock's official start date.

Relatedly, and again for the first time, USBP claims there is no evidence Mr. Joyner was qualified for the Division Chief promotion.

USBP waved these arguments by failing to raise them before its reply brief. In the Fifth Circuit and this Court, arguments raised for the first time in a reply brief are generally waived. *United States v. Jackson*, 426 F.3d 301, 30 n.2 (5th Cir. 2005). "It is well established that courts 'do not review arguments raised for the first time in a reply brief absent a showing of manifest injustice.'" *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, CIVIL ACTION MDL No.

2047 SECTION L (5), at *10 (E.D. La. Dec. 5, 2018); *see United Fire & Cas. Co. v. Supreme Corp. of Texas*, 13-3063, 2014 WL 295136 at *3 (E.D. La. Jan. 27, 2014) (refusing to consider argument made for the first time in reply brief on motion for summary judgment).

**C.    Summary Judgment Based on USBP's New Argument Would be Premature Even Were the Argument Not Waived.**

USBP's new claim that Mr. Joyner was not qualified for the Division Chief promotion clearly relates to the merits of his claim, not its timeliness. Mr. Joyner had no reason to raise evidence about the merits of his case where USBP based its motion for summary judgment solely on the issue of timeliness.[1] USBP's argument that Bullock was not "promoted" and that Mr. Joyner "offered no competent summary judgment evidence demonstrating that he actually competed for the position" also to relate to the merits of Mr. Joyner's claim and not the timeliness issue. (R. No. 19 at 2). USBP seems to be arguing here that USBP did not, in fact, discriminate against Mr. Joyner because he supposedly "did not compete" with Bullock for the position.

Given the fact-based nature of these claims and the lack of any discovery thus far in this case, summary judgment based on USBP's new argument—even if it had not been waived—would be premature. Summary judgment should generally only be granted "after adequate time for discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As artfully noted by the Fourt Circuit, "[s]ummary judgment before discovery forces the non-moving party into a fencing match without a sword or mask." *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir.

---

[1] USBP's suggestion that Mr. Joyner was unqualified for the position makes little sense, given his years of related experience and the fact that he was selected to be interviewed for the position based upon his qualifications. These facts will be further developed at the appropriate time during the discovery process; however plaintiff does note here that both his Complaint and the declaration he filed in support of his opposition to the defendant's summary judgment motion contain ample information about his qualifications and work experience at USBP.

2014). The same is true in the Fifth Circuit. *See, e.g.*, *Sunbelt Savings, FSB Dallas, Texas v. Montross*, 923 F.2d 353, 358 (5th Cir. 1991) (holding that a summary judgment ruling was "premature" when discovery was still pending).

Discovery will answer the questions USBP raises here, because the reality – as alleged in both Mr. Joyner's verified complaint and his declaration filed in support of this matter – is that he was objectively more qualified than Bullock for the promotion in question, and that CPA Bovino specifically cancelled the job posting in question (after Mr. Joyner was selected to interview for the promotion) to cover his tracks for his discriminatory promotion.

Likewise, USBP cited no authority for its novel theory that the fact USBP canceled the vacancy announcement, enabling it to promote Bullock noncompetitively, meant the Division Chief position was somehow no longer the same job that Mr. Joyner applied for and that Bullock was not promoted "over" Mr. Joyner. If USBP's argument were accepted, it would mean that any time an employer did not like the race of the most qualified candidate in its applicant pool, the employer could simply cancel the job posting—thus ensuring that the "undesirable" candidate had no opportunity to compete—hand the position to a less-qualified white candidate, and avoid any claim of discrimination because the minority candidate did not "compete" for the "same" job (after the employer ensured he could no longer compete for it). USBP cannot be allowed to avoid responsibility for its own unlawful acts by manipulating the hiring process in this manner.

**D.  Even if USBP's New Arguments Were Properly Before the Court, Mr. Joyner Properly Exhausted His Administrative Remedies.**

In any event, USBP's new argument misstates the facts and law of this case. USBP itself admits in its Motion for Summary Judgment and Statement of Uncontested Facts that Bovino promoted Bullock over Mr. Joyner for the Division Chief position at issue:

> On August 6, 2018, Plaintiff attended a staff meeting wherein Chief Patrol Agent Bovino announced he had laterally assigned Christopher Bullock too the vacant Supervisory Border Patrol Agent Division Chief position sought by Plaintiff.

USBP's Statement of Uncontested Material Facts (Rec. No. 13-4 at 1 ¶ 6). Plaintiff admitted this allegation, with the exception of clarifying that Bullock was *promoted* rather than laterally transferred, for the Division Chief position in question (Rec. No. 16-2 at 2-3 ¶ 6). Thus, this allegation is now stipulated by the parties and law of the case. Without question, all parties now admit that Bovino **selected** Bullock over Mr. Joyner for the Division Chief position Mr. Joyner had applied for.

In addition, Mr. Joyner has verified pursuant to a declaration made under oath and filed in this case that the allegations in his complaint are true and correct to the best of Mr. Joyner's knowledge, and therefore these allegations are competent summary judgment evidence here. *Resolution Tr. Corp. v. Starkey*, 41 F.3d 1018, 1024 (5th Cir. 1995) (noting "[a] verified complaint can be considered as summary judgment evidence").

Mr. Joyner's verified allegations (in other words, his testimony for purposes of summary judgment), are that he applied for the Division Chief position; CPA Bovino did not select Mr. Joyner; Bovino instead promoted a less-qualified, white candidate over Mr. Joyner because of race-based, discriminatory animus towards Mr. Joyner; and Bovino accomplished this discrimination by cancelling the Division Chief posting Mr. Joyner had applied under so that Bovino could then laterally transfer Bullock into the promoted position. *See* Complaint (Rec. No. 1 at 7-10 ¶ 57-82); *and also* Declaration of Jon Joyner (verifying complaint under oath, Rec. No. 16-1 at 1 ¶ 2). In other words, the discriminatory personnel action at issue here was not cancelling the Division Chief position, it was ***promoting a less-qualified, white comparator,***

8

*Christopher Bullock, to the Division Chief position over Mr. Joyner, specifically because of Mr. Joyner's race.*

Thus, the reality is USBP has already stipulated that Bovino promoted Bullock over Mr. Joyner in this case; Mr. Joyner has testified to that fact for purposes of this summary judgment motion; and USBP has failed to offer any actual summary judgment evidence to the contrary, instead arguing that *plaintiff* should now come forward – before any discovery has been completed in the case! – with some additional evidence that Bullock was promoted over Mr. Joyner, and USBP makes this argument for the first time in its Reply brief. This is a specious argument and should be disregarded.

For the reasons explained above, plaintiff Jon Joyner respectfully asks the Court to deny defendant's motion for summary judgment.

Respectfully submitted,

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz, TA (Bar #32746)
The Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A
Mandeville LA 70448
Telephone: (504) 275-5149
Facsimile: (540) 910-1704
Email: vogeltanz@gmail.com

*Attorney for plaintiff Jon Joyner*

**LOCAL RULE 5.4 CERTIFICATION**

Pursuant to Local Rule 5.4, no certificate of service is required for this document because all parties are electronic filers and will receive notice through the court's electronic filing system.

/s/ Kevin S. Vogeltanz