```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

JON P. JOYNER                                    CIVIL ACTION

VERSUS                                           NO. 19-14234

CHAD WOLF, ACTING SECRETARY                      SECTION "B"(2)
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY
```

### ORDER AND REASONS

Defendant, Chad F. Wolf, Acting Secretary, Department of Homeland Security, filed a motion for summary judgment. Rec. Doc. 13. Plaintiff timely filed a response in opposition. Rec. Doc. 16. Defendant then sought and was granted leave to file a reply. Rec. Doc. 19. Plaintiff then sought and was granted leave to file a surreply. Rec. Doc. 23.

For the reasons discussed below,

**IT IS ORDERED** that the motion for summary judgment is **DENIED**.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, Jon Joyner ("Joyner"), filed suit on December 7, 2019 against Chad Wolf, in his official capacity as acting secretary of Department of Homeland Security ("DHS") including its agency United States Customs and Border Protection ("CBP"), pursuant to Title VII, alleging he was not selected for promotion based on race. Rec. Doc. 1.

In 1996, Joyner was hired by CPB. Id. At the time suit was filed, Joyner was the Patrol Agent in Charge of Gulfport Border Patrol Station in Gulfport, Mississippi. Id.

1

On March 30, 2018, CBP advertised a position for Supervisory Border Patrol Agent, Division Chief at the New Orleans Border Patrol Sector in New Orleans, LA. Rec. Doc. 1 at ¶ 9. On April 11, 2018, Joyner applied for the posted position. Id. Thereafter, Joyner was selected to be interviewed for the vacant position. Id. at ¶ 69. Prior to Joyner's interview, Gregory Bovino ("Chief Bovino") became the new permanent Chief Patrol Agent of New Orleans Sector. Id. at ¶70.

On May 11, 2018, the job posting for the position of Supervisory Border Patrol Agent, Division Chief was cancelled with the cancellation notice indicating that the position would be re-posted via USAJobs.com at a later date. Id. at ¶ 72. However, according to plaintiff the position was never reposted. Id. at ¶ 73.

On August 6, 2018, Joyner attended a staff meeting wherein Chief Bovino announced the lateral transfer of Christopher Bullock ("Bullock") to the vacant Supervisory Border Patrol Agent Division Chief position, which Joyner had originally applied. Rec. Doc. 13-4 and Rec. Doc. 16.

On November 28, 2018, Joyner contacted an EEO counselor because Joyner believed he was discriminated against on account of his race when Bullock was laterally transferred to the Division Chief position. Rec. Doc. 13-2 at 3. On February 28, 2019, Joyner filed a formal complaint alleging race and color discrimination when he

2

was not selected for the Supervisory Border Patrol Agent, Division Chief position. Id. at 5.

On March 5, 2019, an EEO Specialist (Investigator) requested additional information regarding the timeliness of Joyner's claim of discrimination, including whether or not he had ever received EEO training or No Fear Act training. Id. at 10.

On March 15, 2019, Joyner responded to the EEO Specialist's questions regarding his EEO complaint and the timeliness issue. Rec. Doc. 13-2 at 14-16. Thereafter on May 6, 2019, the Office for Civil Rights and Civil Liberties of DHS procedurally dismissed Joyner's administrative complaint stating Joyner failed to contact an EEO counselor within the required 45-day timeline. Rec. Doc. 13-2 at 18-20.

Joyner appealed the procedural dismissal of his administrative complaint to the EEOC, Office of Federal Operations. On September 10, 2019, the EEOC affirmed the agency's final decision dismissing Joyner's claims on the ground of untimely EEO Counselor contact. Rec. Doc. 13-3 at 20-24. Thereafter, Joyner filed suit. Rec. Doc. 1.

Defendant filed the instant motion for summary judgment alleging plaintiff failed to timely exhaust his administrative remedies because plaintiff failed to timely contact an EEO counselor about his discrimination claim. Rec. Doc. 13. Plaintiff filed a response in opposition arguing that he timely initiated

3

the EEO counseling process and is not barred from bringing any claims due to timeliness. Rec. Doc. 16. Defendant sought leave and filed a reply asserting that plaintiff's discrimination claim must be dismissed as a matter of law. Rec. Doc. 19. Plaintiff filed a surreply arguing that the motion for summary judgment should be denied and any new fact-based arguments made in defendant's reply should not be considered by the court. Rec. Doc. 23.

## LAW AND ANALYSIS

### a. Summary Judgment standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the movant bears the burden of proof, it must "demonstrate the absence of a genuine issue of material fact" using competent summary judgment evidence. *Celotex*, 477 U.S. at 323. But "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). When the movant meets its

4

burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). All reasonable inferences must be drawn in favor of the nonmovant, but "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *See Sec. & Exch. Comm'n v. Arcturus Corp.*, 912 F.3d 786, 792 (5th Cir. 2019).

b. **Title VII Claims**

Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U.S.C. § 2000e *et seq.,* prohibits employers from discriminating on the basis of race, color, religion, sex, or national origin, or retaliating against their employees for opposing or seeking relief from such discrimination. Before a federal civil servant can sue his employer for violating Title VII, he must, among other things, initiate contact with an Equal Employment Opportunity ("EEO") counselor at his agency within 45 days. Prior to seeking judicial relief:

> Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.
>
> (1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel

>  action, within 45 days of the effective date of the action.

29 C.F.R. § 1614.105. The first issue before the court is to determine whether the plaintiff exhausted his administrative remedies by timely initiating contact with an EEO counselor.

Parties disagree as to whether the plaintiff's cause of action lies in a matter alleged to be discriminatory or whether the cause of action is a personnel action. Much of the plaintiff's argument is grounded in the plaintiff's contention that the plaintiff's cause of action concerns a personnel action and therefore the plaintiff was required to contact an EEO counselor within 45 days of the effective date of the personnel action. Meanwhile, much of the defendant's argument is based on the defendant's contention that as an aggrieved person, the plaintiff was required to initiate contact with an EEO counselor within 45 days of the date of the matter alleged to be discriminatory.

Defendant argues that this case is similar to *Green v. Brennan*, 136 S. Ct. 1769 (2016).  In *Green*, the Supreme Court held that the statute of limitations on a constructive discharge claim begins to run on the date the employee informed his employer of his resignation not his last day of employment. *Id.* at 1776. Moreover, in *Green*, the Court relied upon what is referred to as the "standard rule for limitations periods,". The *Green* court stated:

> The most helpful canon in this context is "the 'standard rule' " for limitations periods. *Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson,* 545 U.S. 409, 418, 125 S.Ct. 2444, 162 L.Ed.2d 390 (2005). Ordinarily, a " 'limitations period commences when the plaintiff has a complete and present cause of action.' " *Ibid.* "[A] cause of action does not become 'complete and present' for limitations purposes until the plaintiff can file suit and obtain relief." *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.,* 522 U.S. 192, 201, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997). Although the standard rule can be displaced such that the limitations period begins to run before a plaintiff can file a suit, we "will not infer such an odd result in the absence of any such indication" in the text of the limitations period. *Reiter v. Cooper,* 507 U.S. 258, 267, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993).

*Green v. Brennan*, 136 S. Ct. 1769, 1776 (2016). The court determined that the notice rule flowed directly from the Supreme Court's precedent, in *Delaware State Coll. v. Ricks*, 449 U.S. 250 (1980) and *Chardon v. Fernandez,* 454 U.S. 6 (1981), where the Court explained that an ordinary wrongful-discharge claim accrues—and the limitations period begins to run—when the employer notifies the employee he is fired, not on the last day of his employment. *Ricks,* 449 U.S. at 258-259; *Chardon,* 454 U.S. at 8. Thus, applying the default rule, the Supreme Court held that a constructive-discharge claim accrues—and the limitations period begins to run—when the employee gives notice of his resignation, not on the effective date of that resignation. *Green*, 136 S. Ct. at 1769.

7

In applying "the 'standard rule' " for limitations periods as the Supreme Court did in *Green*, the instant plaintiff's limitation period began when the plaintiff learned that Bullock was being laterally transferred to the position. Once Bullock's lateral transfer was announced, the plaintiff was aware that he was not selected and would no longer be able to compete for the position of Division Chief. As such, plaintiff had 45 days from August 8, 2018 to contact the EEO counselor.

However, plaintiff argues that *Green* is inapplicable as *Green* pertained to an allegation discriminatory action and not a discriminatory personnel action. Rec. Doc. 23. Plaintiff is correct that the Supreme Court's analysis is based on the "matter alleged to be discriminatory" clause only. "Green does not contend that his alleged constructive discharge is a "personnel action… We therefore address the "matter alleged to be discriminatory" clause only." *Green,* 136 S. Ct. at 1776. However, plaintiff has failed to consider the defendant's conduct for which the plaintiff complained.

To determine the timeliness of the plaintiff's EEOC complaint, and this ensuing lawsuit, this court must "identify precisely the "unlawful employment practice" of which [the plaintiff] complains." *Delaware State Coll. v. Ricks*, 449 U.S. 250, 257(1980). In the instant case the plaintiff alleges a complaint against the defendant for unlawful disparate-treatment

8

discrimination based on the plaintiff's race concerning plaintiff's non-selection for the position of permanent Division Chief of Operational Programs at New Orleans Sector in favor of his white comparator, Bullock. Rec. Doc. 1 at 15. Thus, the alleged unlawful practice is the lateral transfer of Bullock.

Plaintiff argues that only the effective date of the personnel action in question is considered in calculating the 45-day clock to initiate EEO contact. Rec. Doc. 16. Plaintiff argues that such is evident from the plain language of the statute as the statute requires "contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory, or in the case of *personnel action*, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105

Plaintiff argues the effective date of the action in this case is Bullock's official promotion date. Because the Fifth Circuit has not been presented with the exact issue in this case, the plaintiff cites two non-binding cases *Jakubiak v. Perry*, 101 F.3d 23 (4th Cir. 1996) and *Vasser v. McDonald*, 228 F. Supp. 3d 1 (D.D.C. 2016).

In *Jakubiak,* where a male employee brought a sex discrimination action under Title VII after he applied for and was denied a position, the Fourth Circuit held the 45-day limitations period for the employee to contact an EEO counselor began to run on the date of the agency's decision to hire a female applicant.

9

*Jakubiak*, 101 F.3d at 23. In *Vasser,* the United States District Court, District of Columbia held that in a Title VII discrimination and retaliation case regarding alleged non-promotions, the 45-day limitations period for initiating contact with an EEO counselor begins to run when other candidates were actually promoted or when the employee was notified that the position was cancelled. *Vasser*, 228 F. Supp. 3d at 1 .

Both *Jakubiak* and *Vasser*, are distinguishable from the present case. The plaintiffs in *Jakubiak* and *Vasser* were each applicants for the job, which they were not promoted to, that was the bases of their suits. In the instant case, Joyner was not an applicant for the job because the job was cancelled. Thus, in accordance with *Vasser,* the plaintiff's 45-day limitation period would have begun on May 11, 2018 when the job was cancelled.

However, if the plaintiff can show that the Division Chief position was competitively filled and that Bullock was promoted over plaintiff, plaintiff may have a personnel action and may be within his 45-day limitations period to contact an EEO counselor. The defendant raises this argument in its reply brief. "Generally, and for obvious reasons, a reply brief is limited to addressing matters presented by appellant's opening brief and by appellee's response brief and is not the appropriate vehicle for presenting new arguments or legal theories to the court." *AAR, Inc. v. Nunez*, 408 F. App'x 828, 830 (5th Cir. 2011). Nevertheless, whether the

Division Chief position was competitively filled and whether Bullock was promoted over plaintiff or laterally moved are genuine issues of material fact that preclude summary judgment.

Additionally, this court recognizes that the plaintiff has asserted, from his personal experience, announcements within CPB have been made prior but never occurred as announcements are sometimes made before to the vetting process or final approvals. Rec. Doc. 16 at 17-18. In the light most favorable to the plaintiff, plaintiff's assertion calls into question whether he believed Bullock had been promoted at the time the announcement was made during the August 6, 2018 staff meeting. Furthermore, this also creates a genuine issue of material fact that precludes summary judgment.

### c. Retaliation Claims

Plaintiff argues that his retaliation claims are properly before the court because the retaliation claims grew out of the original EEO complaint. Rec. Doc. 16 at 20. The defendant concedes but argues that the retaliation claims are not properly before the court because the discrimination claim must be dismissed. Rec. Doc. 13-1 at 10.

In *Gupta v. East Texas State University,* 654 F.2d 411 (5th Cir.1981), the Fifth Circuit held that "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district

11

court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." 654 F.2d at 414. The Fifth Circuit explained the practical reasons and policy justifications for this rule as follows:

> It is the nature of retaliation claims that they arise *after the filing of the EEOC charge.* Requiring prior resort to the EEOC would mean that two charges would have to be filed in a retaliation case[,] a double filing that would serve no purpose except to create additional procedural technicalities....

*Id.* (emphasis added). As explained above, this court has found summary judgment improper as to plaintiff's discrimination claim. As such, summary judgment is also improper as it relates to plaintiff's retaliation claims.

New Orleans, Louisiana this 28th day of September, 2020

_____
SENIOR UNITED STATES DISTRICT JUDGE